1086

[909 NYS2d 333]

JEFFREY WENGER, Plaintiff, v INCORPORATED VILLAGE OF ROCK-
VILLE CENTRE, Defendant.

District Court of Nassau County, First District, September 30, 2010

**APPEARANCES OF COUNSEL**

*Hammill, O'Brien, Croutier, Dempsey, Pender & Koehler, P.C.,*
Syosset, for defendant. *Wenger & Arlia, Esqs., LLP*, New York
City, for plaintiff.

## OPINION OF THE COURT

GARY F. KNOBEL, J.

Defendant Incorporated Village of Rockville Centre (Village) moves for an order granting summary judgment as a matter of law pursuant to CPLR 3212 and dismissing this small claims complaint for property damage sustained to the plaintiff's vehicle.

The premise of defendant's motion presents a question of apparent first impression: does Vehicle and Traffic Law § 1104 and the "reckless disregard for the safety of others" standard embodied in that statute (*see* Vehicle and Traffic Law § 1104 [e]) automatically apply in claims where an authorized emergency vehicle, responding to an emergency situation, causes damage to an individual's vehicle as a result of a defect in the emergency vehicle, and not because of the conduct of the operator of the emergency vehicle? This court, contrary to the arguments and contention by defense counsel that the plaintiff herein cannot prove that the subject vehicle was being driven recklessly, answers the question in the negative.

The basic facts of this small claims action are undisputed. This action arises from an automobile accident which occurred on July 23, 2009. The defendant's fire truck, number 447, was responding to an emergency call when the right rear compartment door swung open and struck the plaintiff's vehicle (a 2005 Toyota Sienna) as the plaintiff's vehicle was stopped at a red light on Sunrise Highway near the intersection of North Park Avenue in the Village of Rockville Centre. According to a village incident report dated July 23, 2009, there was apparently a defect in the latch mechanism on the fire truck's compartment door which accidentally caused the door to swing open. Richard Butensky and John P. Griffin, both of whom are volunteer firefighters with the Village of Rockville Centre, stated in their affidavits in support of the defendant's motion that the fire truck was en route to the location of the emergency and was operating with emergency lights and sirens when the accident occurred. Mr. Griffin was operating the fire truck and Mr. Butensky was a passenger in the truck.

Vehicle and Traffic Law § 1104 (a) provides that "[t]he driver of an authorized emergency vehicle, when involved in an emergency operation, may exercise the privileges set forth in this section, but subject to the conditions herein stated." Enumerated in subdivision (b) are those privileges that the driver of an

authorized emergency vehicle may exercise. The driver of an authorized emergency vehicle may: (1) stop, stand or park irrespective of the provisions of title VII of the Vehicle and Traffic Law; (2) proceed past a steady red signal, a flashing red signal or a stop sign, but only after slowing down as may be necessary for safe operation; (3) exceed the maximum speed limits so long as he does not endanger life or property; and (4) disregard regulations governing directions of movement or turning in specified directions (Vehicle and Traffic Law § 1104 [b]). Subdivision (e) provides that "[t]he foregoing provisions shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others" (*see Saarinen v Kerr*, 84 NY2d 494, 499-500 [1994]). The "foregoing provisions" referenced in subdivision (e) are the four enumerated provisions set forth in the aforementioned subdivision (b) (*see Kabir v County of Monroe*, 68 AD3d 1628, 1629-1630 [4th Dept 2009] ["the statute exempts a driver whose operation of an emergency vehicle falls within the four categories of subdivision (b) from the consequences of his o(r) her ordinary negligence, rendering him or her liable only for conduct constituting the higher standard of reckless disregard for the safety of others"]).

The Court of Appeals reiterated late last year in *Ayers v O'Brien* (13 NY3d 456, 459 [2009]) that "the purpose of the statute . . . is to give *operators* of emergency vehicles the freedom to perform their duties unhampered by the normal rules of the road" (quoting *Saarinen v Kerr*, 84 NY2d 494, 502 [1994] [emphasis added and internal quotation marks omitted]). The Court echoed its holding in *Saarinen v Kerr* (84 NY2d 494, 497 [1994]) that Vehicle and Traffic Law § 1104 (e) "precludes the imposition of liability for otherwise privileged *conduct* [set forth in section 1104 (b)] except where the *conduct* rises to the level of recklessness" (*Ayers v O'Brien* at 458-459 [emphasis added], quoting *Saarinen v Kerr* at 497). Thus, Vehicle and Traffic Law § 1104 clearly is concerned with "[t]he manner in which [the driver of the authorized emergency vehicle] operates his or her vehicle in responding to an emergency call" (*Badalamenti v City of New York*, 30 AD3d 452, 452 [2d Dept 2006]) and whether this driver "has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would

follow and has done so with a conscious indifference to the outcome" (*Green v State of New York*, 71 AD3d 1310, 1311 [3d Dept 2010], quoting *Saarinen v Kerr* at 501).

In contrast, however, Vehicle and Traffic Law § 1104 does not encompass actions or occurrences that are ancillary to the actual operation of an emergency vehicle, such as when, as here, a compartment door on a fire truck responding to an emergency swings open and damages a vehicle. Nor does the statute contemplate a defect in an authorized emergency vehicle that is exacerbated by reckless driving. Furthermore, although the defendant's fire truck was apparently involved in an emergency operation at the time of the accident and had lights flashing and sirens sounding, the defendant has not established that its fire truck was ever engaged in any of the four enumerated privileged categories of subdivision (b) of Vehicle and Traffic Law § 1104 (*see Kabir v County of Monroe* at 1633). Consequently, the qualified immunity set forth in subdivision (e) of section 1104 never became applicable (*id.*). Accordingly, the defendant has not demonstrated its prima facie entitlement to summary judgment as a matter of law that the claim must be dismissed pursuant to Vehicle and Traffic Law § 1104 (e) (*see Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). There remains an issue of fact as to whether the defendant was negligent in properly maintaining the compartment door on the subject fire truck. In their sworn affidavits, both Mr. Butensky and Mr. Griffin identically attest that "[w]hen the rear compartment doors are open, a buzzer will sound," and that "[w]hen we left the fire house, the doors were closed and no buzzer was sounding. I do not know what caused the rear compartment doors to open." In view of these statements, the judge presiding at trial may consider an inference of negligence pursuant to the doctrine of res ipsa loquitur, which "[i]n a proper case, . . . allows a [trier of fact] to consider the circumstantial evidence and infer that the defendant was negligent in some unspecified way" (*Morejon v Rais Constr. Co.*, 7 NY3d 203, 205-206 [2006]). The doctrine permits an inference of negligence to be drawn if: (1) the event was "of a kind which ordinarily does not occur in the absence of someone's negligence"; (2) the event was "caused by an agency or instrumentality within the exclusive control of the defendant"; and (3) the event was not "due to any voluntary action or contribution on the part of the plaintiff" (*Dermatossian v New York City Tr. Auth.*, 67 NY2d 219, 226 [1986] [citation and internal quotation marks omitted]). The parties shall ap-

pear for trial in the Night Small Claims Part on November 10, 2010, at 6:00 P.M. When both parties are present, the case shall be sent to an arbitrator to discuss a monetary settlement of the matter; if the case cannot be settled, it shall be tried by the judge presiding in the part, or by the arbitrator if both parties consent.

The court, sua sponte, amends the caption on the court file to correctly change the spelling of the plaintiff's last name from Wanger to Wenger.